## **EXHIBIT 7**

**Bristol Criminal Indictment**

ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA         :     INDICTMENT
                                 :
         v.                      :
                                 :     **10 CRIM 1239**
JONATHAN BRISTOL,                :
                                 :
         Defendant.              :
                                 :
- - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/14/10

COUNT ONE

(Money Laundering)

The Grand Jury charges:

### Relevant Persons and Entities

1. JONATHAN BRISTOL, the defendant, is an attorney admitted to practice in the States of New York and New Jersey. In or about November 2008, BRISTOL became a partner at a prominent United States law firm (the "Law Firm"). At all times relevant to this Indictment, BRISTOL was practicing law as a transactional attorney at the Law Firm.

2. At all times relevant to this Indictment, Kenneth Starr was the owner and president of Starr & Company, LLC, which purported to be in the business of managing the assets of, and providing financial planning advice to, high net-worth and celebrity clients. Starr & Company, LLC, also owned and controlled a related entity, Starr Investment Advisers, LLC, a registered investment adviser (collectively, the "Starr Entities"). On or about September 10, 2010, Starr pleaded guilty

in the United States District Court for the Southern District of New York to wire fraud, money laundering and investment advisor fraud, as charged in Indictment 10 Cr. 520 (SAS).

3. As set forth in more detail below, JONATHAN BRISTOL, the defendant, helped Kenneth Starr defraud his clients and concealed Starr's criminal conduct by using two separate attorney trust accounts that BRISTOL controlled ("Escrow Account # 1," "Escrow Account # 2," and collectively, the "Escrow Accounts").

### The Victims

4. JONATHAN BRISTOL, the defendant, used the Escrow Accounts to launder over $20 million that Kenneth Starr obtained by fraud from his clients. The client-victims harmed by BRISTOL's actions on behalf of Starr include the following:

   a. Victim # 1 is a former hedge-fund manager and philanthropist. BRISTOL conducted financial transactions involving approximately $1.7 million that Starr defrauded from Victim # 1.

   b. Victim # 2 is an actress. BRISTOL conducted financial transactions involving approximately $1 million that Starr defrauded from Victim # 2.

   c. Victim # 3 is a former executive of a talent agency. BRISTOL conducted financial transactions involving approximately $2 million that Starr defrauded from Victim # 3.

    d. Victim # 4, who is in his 70s, is the step-son of the deceased heir to a business fortune. BRISTOL conducted financial transactions involving over $3.725 million that Starr defrauded from Victim # 4.

    e. Victim # 5, who is 100 years old, is the heiress to a business fortune. BRISTOL conducted financial transactions involving approximately $5.75 million that Starr defrauded from Victim # 5.

    f. Victim # 8, who is in his late 70s, is a film producer and businessman. BRISTOL conducted financial transactions involving over $3.5 million that Starr defrauded from Victim # 8.

    g. Victim # 10 is the ex-wife of a wealthy investor and businessman. BRISTOL conducted financial transactions involving approximately $4.5 million that Starr defrauded from Victim # 10.

### Origin of The Money Laundering Activities

    5. In or about late 2008, JONATHAN BRISTOL, the defendant, accepted an offer to become a "capital partner" at the Law Firm. In his initial compensation agreement, the Law Firm agreed that among other things, it would guarantee BRISTOL annual compensation of $1.35 million for each of the fiscal years ending January 31, 2010 and 2011.

    6. For the fiscal year ending January 31, 2010, the

legal practice of JONATHAN BRISTOL, the defendant, was much less lucrative than expected. Accordingly, by the end of August 2009, BRISTOL had already finalized an agreement with the Law Firm to reduce his compensation. Among other changes, BRISTOL's guaranteed compensation was reduced to $500,000 for the fiscal year ending January 31, 2010, and BRISTOL was only to receive bonuses if his collections exceeded certain thresholds.

7. In or about July 2009, JONATHAN BRISTOL, the defendant, obtained new business that was important to his compensation at the Law Firm. Specifically, Kenneth Starr retained BRISTOL and the Law Firm to represent Starr and the Starr Entities in connection with an investigation by the United States Securities and Exchange Commission ("SEC"). BRISTOL also represented Starr in connection with a dispute between Starr and Victim # 9 relating to Starr's improper investment on Victim # 9's behalf. Over the ensuing months, BRISTOL and the Law Firm billed Starr and the Starr Entities over $1 million for legal work, representing important business for BRISTOL during an otherwise difficult legal market.

8. Beginning at least in or about July 2009, JONATHAN BRISTOL, the defendant, knew that Starr was engaged in some form of illegal activity. By using the Escrow Accounts to conduct certain financial transactions, described in detail below, BRISTOL prevented Starr's clients from learning about the misuse

4

of their monies, including (1) to pay Starr & Company, LLC operating expenses, (2) to fund a $4 million settlement with Victim # 9, a former Starr client, (3) to pay Starr & Company, LLC's debt to the Law Firm, (4) to purchase a luxury condominium for Starr and (5) to repay $1 million to another client who detected Starr's fraud.

### Use of the Escrow Accounts to Fund Starr Operating Expenses in Late 2009

9.      JONATHAN BRISTOL, the defendant, repeatedly used the Escrow Accounts to help Kenneth Starr conceal that he was stealing client monies to fund the operating expenses of Starr & Company, LLC. For example, between on or about November 13, 2009 and on or about December 22, 2009, STARR unlawfully diverted, to a Starr & Co. bank account, $750,000 belonging to Victim # 1's foundation and $350,000 belonging to one of Victim # 8's trusts. Starr directed both of these transfers to Escrow Account # 2, from which BRISTOL then transferred the funds to the Starr & Co. bank account.

### Use of The Escrow Accounts To Pay A Settlement with Victim # 9 and to Fund Starr Operating Expenses in January 2010

10.     In or about 2009, Kenneth Starr entered into a series of agreements with Victim # 9, a former client, that related to, and settled, certain claims Victim # 9 had made against Starr. Starr breached a number of those agreements by failing to pay the settlement amounts. In or about 2009, Starr

5

again agreed to settle Victim # 9's claims by paying Victim # 9 approximately $4 million. Ultimately, the parties to the settlement agreed that Starr and Starr & Co. would have until on or about January 7, 2010 to pay $4 million to Victim # 9.

      11. To make that required $4 million payment to Victim # 9 in January 2010, Kenneth Starr, in fact, stole from his existing clients, namely, Victim # 3, Victim # 8, and Victim # 10. To prevent Victim # 9 from learning that he/she was being paid with other clients' funds, and to prevent Starr's other clients discovering the theft, JONATHAN BRISTOL, the defendant, permitted Starr to wire these funds into Escrow Account # 2, from which BRISTOL then wired the monies to accounts designated by Victim # 9. Specifically, Starr caused the following three wire transfers be made to Escrow Account # 2:

| Date | Source | Amount |
| --- | --- | --- |
| 1/5/10 | Victim # 10 | $2,000,000 |
| 1/5/10 | Victim # 3 | $1,000,000 |
| 1/7/10 | Victim # 8 | $2,500,000 |

BRISTOL knew that the monies received by Escrow Account # 2 belonged to Starr's clients because, among other things, the bank records that Bristol received identified the source of the funds. Nonetheless, on January 7, 2010, BRISTOL wired these monies in 5 installments to pay Starr's settlement and provide funds directly

6

to one of Starr's business entities, as follows:

| Date | Destination | Amount |
|---|---|---|
| 1/7/10 | Victim # 9 Settlement | $2,500,000 |
| 1/7/10 | Victim # 9 Settlement | $1,500,000 |
| 1/7/10 | Starr & Company, LLC | $ 500,000 |
| 1/7/10 | Starr & Company, LLC | $ 500,000 |

12. In or about March 2010, Victim # 3 learned from statements sent by Starr & Company, LLC that $1 million had been transferred out of his/her account on or about January 5, 2010. Victim # 3 attempted to contact Kenneth Starr and another employee of Starr & Company, LLC to learn why the transfer had been made and why it was sent to JONATHAN BRISTOL, the defendant. Eventually, Victim # 3 contacted BRISTOL directly. BRISTOL told Victim # 3 that the $1 million was being sent to the Escrow Accounts to be bundled with monies from four other investors in order to make a bigger, $5 million investment. In truth and in fact, however, and as BRISTOL well knew, the $1 million had been misappropriated by Starr.

### Use of the Escrow Accounts to Fund Starr Operating Expenses in February 2010

13. In February 2010, JONATHAN BRISTOL, the defendant, again utilized the Escrow Accounts to conceal Kenneth Starr's misappropriation of millions of dollars of client funds to pay Starr and Company, LLC's operating expenses. On or about February 9, 2010, Starr made or directed an unauthorized transfer

of $1.5 million from Victim # 10's trust account to Escrow Account # 1. The following day, on or about February 10, 2010, Starr caused the $1.5 million to be transferred from Escrow Account # 1 to Escrow Account # 2. The next day, on or about February 11, 2010, BRISTOL transferred $1.5 million of the client money from Escrow Account # 2 to a Starr & Company, LLC bank account.

### BRISTOL's Use of the Escrow Account to Pay The Law Firm In March 2010

14. In late February 2010 and continuing through March 2010, JONATHAN BRISTOL, the defendant, faced increasing pressure from the Law Firm to collect unpaid legal fees owed by Kenneth Starr and the Starr Entities. BRISTOL reported on his efforts to collect $750,000 in fees on a regular, at times daily, basis to the management of the Law Firm. He also reported that Starr was having trouble making the payments because 2009 had been a difficult year for Starr financially.

15. On or about March 17, 2010, JONATHAN BRISTOL, the defendant, reported to his management that all of BRISTOL's "pushing" was getting the Law Firm closer to getting payment from Kenneth Starr. BRISTOL stated that the Law Firm would be getting a bank check for $100,000 later that day.

16. The Law Firm did receive a $100,000 payment that day, but it did not come from Starr - it came from the Escrow Accounts. In March and early April 2010, JONATHAN BRISTOL, the

8

defendant, used the Escrow Accounts to issue a $100,000 check to the Law Firm, and to pay other operating expenses of Starr & Company, LLC. At about the same time, BRISTOL also used the Escrow Accounts to send Starr client money to Starr & Company, LLC, as he had each month since at least November 2009. Specifically, BRISTOL caused the following payments, among others, to be made from the Escrow Accounts:

| Date | Destination | Amount |
|---|---|---|
| 3/08/10 | Starr & Company, LLC | $100,000 |
| 3/17/10 | Law Firm | $100,000 |
| 3/29/10 | Starr & Company, LLC | $500,000 |
| 3/29/10 | Starr & Company, LLC | $250,000 |
| 4/6/10 | Starr & Company, LLC | $250,000 |

The funds for these payments came entirely from defrauded clients of Kenneth Starr, as BRISTOL well knew, as follows:

| Date | Source | Amount |
|---|---|---|
| 2/09/10 | Victim # 10 | $1,500,000 |
| 2/10/10 | Victim # 4 | $500,000 |
| 2/10/10 | Victim # 4 | $400,000 |
| 3/24/10 | Victim # 10 | $1,000,000 |

**Use of the Escrow Accounts To Purchase Starr's Luxury Apartment in April 2010**

17. In or about April 2010, Kenneth Starr defrauded Victim # 2, Victim # 4, Victim # 5, and Victim # 8 of over $7 million. Starr forwarded that stolen money to the Escrow

9

Accounts and JONATHAN BRISTOL, the defendant, then transferred the monies to complete Starr's purchase of a luxury condominium on the Upper East Side of Manhattan.

### Use of the Escrow Accounts To Repay Victim # 2 With Another Victim's Money

18. In the weeks that followed the purchase of the luxury condominium, several of Kenneth Starr's clients discovered that he had misappropriated their funds and demanded repayment. On or about April 26, 2010, shortly after learning about the $1 million theft, Victim # 2 reached out to BRISTOL, and told him that Starr had taken $1 million of his/her money without her permission. BRISTOL replied that he thought the money belonged to Starr. BRISTOL promised to wire the money back, but said that he would have to go back to the bank in New Jersey in order to do it. Victim # 2 asked why he had to go to the bank personally, and BRISTOL claimed that it would be the fastest way to complete the transaction. BRISTOL did not tell Victim # 2's that the $1 million was gone, that it had been used to purchase a luxury condominium for Starr, and that Starr had to wire another $1 million to the account before BRISTOL could return any money to Victim # 2.

19. Kenneth Starr then diverted $1 million from the account of yet another client, Victim # 3, to the Escrow Accounts. JONATHAN BRISTOL, the defendant, then wired the funds to Victim # 2. By using the Escrow Accounts, BRISTOL prevented

10

Victim # 2 from learning that the "refund" had simply been stolen from another client.

20. Shortly before May 27, 2010, when the Internal Revenue Service arrested Kenneth Starr on charges of wire fraud, money laundering, and investment advisor fraud, the SEC contacted Victim # 3 to inquire about the April 26, 2010 transfer of $1 million to the Escrow Accounts. Victim # 3 had no knowledge of this transaction before the SEC's inquiry. Victim # 3 contacted JONATHAN BRISTOL, the defendant, and asked BRISTOL why the $1 million had been transferred. BRISTOL replied that the transaction was routine and related to the bundling of funds for investment purposes, and there was nothing to be worried about. Victim # 3 asked BRISTOL why Starr needed $2 million to bundle for investments. BRISTOL again said that this was routine for such investments and nothing to worry about. BRISTOL added that the April $1 million transfer was for a bundled investment at UBS. BRISTOL did not mention that the monies were used to repay Victim # 2.

### Money Laundering Transactions

21. As described in part above, JONATHAN BRISTOL, the defendant, used the Escrow Accounts to launder funds in the following transactions, among others:

| DATE | VICTIM | AMOUNT |
|---|---|---|
| 7/14/09 | Victim # 4 | $750,000 |

11

| | | |
|---|---|---|
| 10/8/09 | Victim # 4 | $125,000 |
| 11/2/09 | Victim # 1 | $250,000 |
| 11/3/09 | Victim # 8 | $150,000 |
| 11/18/09 | Victim # 1 | $250,000 |
| 11/25/09 | Victim # 1 | $250,000 |
| 12/18/09 | Victim # 8 | $350,000 |
| 1/5/10 | Victim # 10 | $2,000,000 |
| 1/5/10 | Victim # 3 | $1,000,000 |
| 1/7/10 | Victim # 8 | $2,500,000 |
| 1/14/10 | Victim # 4 | $800,000 |
| 3/24/10 | Victim # 10 | $1,000,000 |
| 4/13/10 | Victim # 2 | $1,000,000 |
| 4/13/10 | Victim # 5 | $750,000 |
| 4/13/10 | Victim # 4 | $250,000 |
| 4/15/10 | Victim # 5 | $4,250,000 |
| 4/16/10 | Victim # 5 | $750,000 |
| 4/16/10 | Victim # 8 | $145,000 |
| 4/16/10 | Victim # 8 | $105,000 |
| 4/26/10 | Victim # 3 | $1,000,000 |

### Statutory Allegation

22. From at least in or about July 2009, through and including in or about April 2010, in the Southern District of New York and elsewhere, JONATHAN BRISTOL, the defendant, and others known and unknown, unlawfully and willfully, and knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, did conduct and attempt to conduct financial transactions which in fact involved

12

the proceeds of specified unlawful activity, to wit, the wire fraud scheme perpetrated by Kenneth Starr against Starr's clients, with the intent to promote the carrying on of specified unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, to wit, BRISTOL utilized Escrow Account # 2 to accept wire transfers of stolen funds from Kenneth Starr and then diverted those funds at Starr's direction, making it appear as if the funds were being directed to lawful and appropriate investments and were being received from a lawful and appropriate source.

(Title 18, United States Code, Section 1956(a)(1)(A)(i) &(B)(i)).

### FORFEITURE ALLEGATION

23. As the result of committing the money laundering offense alleged in this Indictment, JONATHAN BRISTOL, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), all property, real and personal, involved in the money laundering offense and all property traceable to such property, including but not limited to the following:

    a. At least $20 million in United States currency, in that such sum in aggregate is property representing the amount of property involved in the money laundering offense

alleged this Indictment.

## Substitute Asset Provision

24. If any of the forfeitable property described above in the prior paragraph of this Indictment, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 982(b) and Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 982; Title 21, United States Code, Section 853(p).)

_____  
GRAND JURY FOREPERSON

_____  
PREET BHARARA  
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JONATHAN BRISTOL,

Defendant.

## INDICTMENT

10 Cr. \_\_\_ (\_\_\_)

(18 U.S.C. 1956(a)(1).)

PREET BHARARA
United States Attorney.

A TRUE BILL

_____
Foreperson.

12-14-10 Filed Indictment. Under Seal. Arrest Warrant Issued.
Pitman
U.S.M.J